UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.                                                            **MEMORANDUM & ORDER**
                                                              17-CR-546-2 (WFK)
AFOLABI AJELERO,

               Defendant.
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 9, 2022, the Court sentenced Defendant to a total of 60 months of custody followed by two years of supervised release with special conditions, restitution, and a $300.00 mandatory special assessment. Sentencing Mem. & Order at 1, ECF No. 112. On June 5, 2024, Defendant filed his second *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) in light of the so-called "Zero-Point Offender" reduction contained in Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or the "Sentencing Guidelines"). Def. Second Mot. to Reduce Sentence ("Second Mot."), ECF No. 137. On June 20, 2024, the Court granted Defendant's motion for a sentence reduction and scheduled a re-sentencing hearing. ECF No. 141. The Court now re-sentences Defendant, providing a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is sentenced to a total of 51 months of custody, consisting of 51 months on Count 37 and 36 months on Counts 42 and 43, to run concurrently, followed by three years of supervised release with special conditions, consisting of three years on Count 37 and one year on Counts 42 and 43, to run concurrently. Defendant is also ordered to pay restitution in the amount of $45,869.32 on Count 37, $1,463.00 on Count 42, and $907.00 on Count 43, and a $300.00 mandatory special assessment.

## BACKGROUND

On November 9, 2018, the Government filed a forty-three-count Superseding Indictment against Defendant and his co-defendants (collectively, the "Defendants"), alleging Defendants engaged in a scheme to defraud the Internal Revenue Service ("IRS") by submitting materially false tax returns to the IRS to collect tax refunds. Superseding Indictment, ECF No. 35. The Superseding Indictment charged Defendant with: (1) Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts 1-18); (2) Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Counts 19-36 and 38-41); (3) Conspiracy to Commit Aggravated Identity Theft, in violation of 18

1

U.S.C. §§ 1028A and 371 (Count 37); and (4) Aiding and Assisting in the Preparation of False Tax Returns, in violation of 26 U.S.C. § 7206(2) (Counts 42 and 43). *Id.*

On March 4, 2019, following a six-day trial, Defendant was convicted by a jury of one count of Conspiracy to Commit Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A and 371 (Count 37), and two counts of Aiding and Assisting in the Preparation of a False Tax Return, in violation of 26 U.S.C. § 7206(2) (Counts 42 and 43). Jury Verdict, ECF No. 80. The jury returned a verdict of not guilty on Counts 3, 4, 7, 10-15, 18, 21, 22, 25, 28-33, 36, 39, and 41. *Id.* All other counts were previously dismissed on the Government's motion. Minute Entry on Mar. 1, 2019.

On August 9, 2022, the Court sentenced Defendant to a total of 60 months of custody, consisting of 60 months on Count 37 and 36 months on Counts 42 and 43, to run concurrently. Sentencing Mem. & Order at 1. The Court also sentenced Defendant to two years of supervised release with special conditions following his term of custody, consisting of two years on Count 37 and one year on Counts 42 and 43, to run concurrently. *Id.* The Court ordered Defendant to pay a $300.00 mandatory special assessment, as well as restitution in the amount of $45,869.32 on Count 37, $1,463.00 on Count 42, and $907.00 on Count 43. *Id.* The Court ordered Defendant to surrender to the United States Marshals Service on September 26, 2022. Judgment at 2, ECF No. 113.

On February 9, 2024, Defendant filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), in light of the so-called "Zero-Point Offender" reduction contained in Amendment 821. Def. First Mot. to Reduce Sentence, ECF No. 135. The Court denied Defendant's motion. *See* Minute Entry on Feb. 12, 2024.

On February 28, 2024, the U.S. Probation Department ("Probation") filed a Supplemental Presentence Report ("Supplemental PSR") stating Defendant is eligible for a sentence reduction as a Zero-Point Offender. Suppl. PSR, ECF No. 136.

On April 24, 2024, the Second Circuit affirmed Defendant's sentence. *United States v. Ajelero*, 22-1825, 2024 WL 1756060, at *1 (2d Cir. 2024) (summary order); *see also* ECF No. 139.

On June 5, 2024, Defendant filed a second *pro se* motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2), in light of the Zero-Point Offender reduction. Second Mot. On June 20, 2024, the Government filed its response to Defendant's second motion to reduce his sentence, stating it did not oppose Defendant's motion and requesting the Court retroactively recalculate Defendant's Sentencing Guidelines range and impose a new sentence within that range. Gov't Response at 3, ECF No. 140. That same day, the Court granted Defendant's motion for a sentence reduction and scheduled a re-sentencing hearing for November 14, 2024, ECF No. 141, which was adjourned until December 13, 2024, ECF No. 143.[1]

## DISCUSSION

The Court now sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric outlined in 18 U.S.C. § 3582(c)(2).

### I.   Legal Standard

A defendant may move to reduce his sentence based on a retroactive amendment to the United States Sentencing Guidelines set by the United States Sentencing Commission (the "Sentencing Commission" or "Commission"). 18 U.S.C. § 3582(c)(2) provides, where a defendant's term of imprisonment is "based on a sentencing range that has subsequently been

---

[1] Although Defendant filed his motions *pro se*, he appeared at the re-sentencing hearing on December 13, 2024 represented by his retained counsel, Bernard H. Udell.

3

lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," a district court "may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

District courts follow a two-step process for motions to reduce sentence under § 3582(c)(2). *Dillon v. United States*, 560 U.S. 817, 827 (2010). First, "§ 3582(c)(2) requires the court to follow the Commission's instructions in [U.S.S.G.] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id.* Second, "§ 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized . . . is warranted in whole or in part under the particular circumstances of the case." *Id.*; *see also United States v. Laurent*, 11-CR-303, 2024 WL 4424393, at *3 (E.D.N.Y. Oct. 4, 2024) (Garaufis, J.) ("*If* eligibility for a sentence reduction is established under step one, the court proceeds to step two of the analysis by considering the factors set forth in section 3553(a)." (emphasis added)).

## II.    Zero-Point Offender Eligibility

On November 1, 2023, Amendment 821 to the Sentencing Guidelines, also known as the "Zero-Point Offender" reduction, became effective. Amendment 821 provides certain offenders who did not receive any criminal history points under Chapter Four, Part A of the Sentencing Guidelines and whose instant offense did not involve certain aggravating factors—so-called "Zero-Point Offenders"—are eligible for a two-level decrease in their total offense level. *See* Amendment 821 to U.S. Sentencing Guidelines; U.S.S.G. §4C1.1. The Zero-Point Offender reduction may be applied retroactively unless the reduction "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. §1B1.10(a)(2)(B).

To be eligible for a sentence reduction as a Zero-Point Offender, a defendant must meet the following criteria:

(1) the defendant did not receive any criminal history points from Chapter Four, Part A of the Sentencing Guidelines;

(2) the defendant did not receive an adjustment under U.S.S.G. §3A1.4 (Terrorism);

(3) the defendant did not use violence or credible threats of violence in connection with the offense;

(4) the offense did not result in death or serious bodily injury;

(5) the instant offense of conviction is not a sex offense;

(6) the defendant did not personally cause substantial financial hardship;

(7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(8) the instant offense of conviction is not covered by U.S.S.G. §2H1.1 (Offenses Involving Individual Rights);

(9) the defendant did not receive an adjustment under U.S.S.G. §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or U.S.S.G. §3A1.5 (Serious Human Rights Offense);

(10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role); and

(11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. §4C1.1. The parties all agree Defendant satisfies each of these criteria. Second Mot. at 7; Gov't Response at 3; Suppl. PSR at 3. The Court agrees as well.

At Defendant's initial sentencing hearing, the Court calculated Defendant's recommended Guidelines sentencing range to be 51 to 63 months of imprisonment based on a total offense level of 24, a criminal history score of zero, and a criminal history category of I. Sentencing Mem. & Order at 9. As a Zero-Point Offender, Defendant receives a two-level reduction to his original total offense level of 24, yielding an amended total offense level of 22. Coupled with a criminal history category of I, this amended total offense level results in an amended Guidelines range of 41 to 51 months. Because this reduction "has the effect of lowering" Defendant's original Guidelines range of 51 to 63 months, the Court finds the Zero-Point Offender reduction may be applied retroactively. *See* U.S.S.G. §1B1.10(a)(2)(B).

### III.    18 U.S.C. § 3553(a) Factors

Having found Defendant eligible for a sentence reduction, the Court turns to the second prong under 18 U.S.C. § 3582(c)(2) to consider any applicable § 3553(a) factors and determine whether the reduction is warranted in whole or in part under the particular circumstances of the instant case. There are seven § 3553(a) factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### A. The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

1. <u>Family and Personal Background</u>

Defendant was born on August 19, 1964 in Lagos, Nigeria to Nasir deen Kudelndo and Ayoola Ajelero. *See* Original Presentence Investigation Report ("PSR") ¶ 48, ECF No. 93. Defendant's parents are deceased. *Id.* Defendant has two full siblings as well as several half-

6

siblings. *Id.* Defendant was raised by his parents and his father's two other wives in a middle-class household in Nigeria and reported no abuse in his childhood. *Id.* ¶ 50.

Defendant moved from Nigeria to Brooklyn, New York in 1993. *Id.* ¶ 53. He became a naturalized citizen of the United States in 2004. *Id.* ¶ 52.

Defendant has two adult sons, both of whom resided with Defendant prior to his imprisonment for the instant offense. *Id.* ¶ 51. Defendant's sons are aware of his conviction and remain supportive of him. *Id.* The mother of Defendant's children passed away in October 2020. Ex. 1 to Original Def. Sentencing Mem., ECF No. 107.

2. Educational and Employment History

Defendant obtained the equivalent of a bachelor's degree in mechanical engineering from the University of Ife in Lagos, Nigeria in 1989, and obtained a computer networking certification from Nouvall Engineering Services in 1998. PSR ¶¶ 58-59.

As discussed *infra* Part III(A)(6), Defendant owned and operated Mo-Betta Ventures, Inc., the subject of the instant offense, from 1996 to 2019. *Id.* ¶ 64. Defendant also has prior work experience as a ride share and cab driver in Brooklyn, as an employee of a cleaning business in Brooklyn, and as a site engineer in Nigeria. *Id.* ¶¶ 61, 63, 65-66.

3. Prior Convictions

Defendant has no prior convictions.

4. Medical and Mental Health

Prior to his initial sentencing, Defendant reported some medical issues, but no history of emotional or mental health issues. *Id.* ¶¶ 55-56.

5. Substance Abuse

Defendant reported no history of substance use or alcohol abuse. *Id.* ¶ 57.

6. <u>Nature and Circumstances of the Offense</u>

Federal law requires individuals to declare their federally taxable personal income to the IRS. *Id.* ¶ 6. Tax preparation businesses receive an Electronic Filing Identification Number ("EFIN"), and tax preparers receive a Preparer Tax Identification Number ("PTIN"). *Id.* Electronic Return Originators ("EROs") are authorized IRS e-file providers who originate the electronic submission of a return to the IRS. *Id.* ¶ 7.

Defendant owned and operated Mo-Betta Ventures, Inc., a New York State corporation which, among other business purposes, provided tax preparation and transportation services. *Id.* ¶ 8. Together with co-defendant Hakeem Bamgbala, Defendant also operated Kaybamz, Inc., a tax preparation business, as an ERO. *Id.*

Between 2009 and 2015, Defendant and co-defendant Bamgbala obtained the personal identifying information of at least 125 taxpayers they had never met, which they used to prepare and file false forms with the IRS and to print and negotiate refund transfer checks. *Id.* ¶¶ 9-13. Defendant and co-defendant Bamgbala used Defendant's EFIN and PTIN to electronically sign and submit fraudulent tax forms, which were filed by Kaybamz, Inc. *Id.* Throughout the conspiracy, Defendant sent copies of fraudulently signed documents and identification cards, including driver's licenses, to another ERO, and added false information to the fraudulent tax return forms. *Id.* ¶ 11. Defendant continued to assist in preparing false and fraudulent tax returns even after receiving a letter from the IRS in 2014 notifying him the IRS would revoke his EFIN should he continue to engage in such activity. *Id.* ¶ 12.

Defendant also assisted in preparing false corporate tax returns between 2011 and 2017 on behalf of Mo-Betta Ventures, Inc., including by fabricating the business's gross receipts for fuel and other expenses in order to receive fraudulent tax credits. *Id.* ¶¶ 17-20.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The instant sentence recognizes the seriousness of Defendant's offense, which involved the use of the personal identifying information of taxpayers to defraud the United States, and takes into account Defendant's status as a Zero-Point Offender pursuant to the Sentencing Guidelines. The Court's amended sentence will deter others from engaging in similar acts and justly punishes Defendant for his offenses.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted by a jury of one count of Conspiracy to Commit Aggravated Identity Theft, in violation of 18 U.S.C. § 371, and two counts of Aiding and Assisting in the Preparation of a False Tax Return, in violation of 26 U.S.C. § 7206(2). For Conspiracy to Commit Aggravated Identity Theft, Defendant faces a maximum term of imprisonment of five years, and a maximum term of supervised release of three years; if a condition of release is

9

violated for this count, Defendant may be sentenced to up to two years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision. 18 U.S.C. §§ 371, 3583(b)(2), 3583(e). For Aiding and Assisting in the Preparation of a False Tax Return, Defendant faces a maximum term of imprisonment of three years for each count, and a maximum term of supervised release of one year for each count; if a condition of release is violated for these counts, Defendant may be sentenced to up to one year of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision. 26 U.S.C. § 7206(2); 18 U.S.C. § 3583(b)(3), (e). Pursuant to 18 U.S.C. § 3624(e), multiple terms of supervised release shall run concurrently.

A term of not less than one nor more than five years of probation may be imposed as to each of Defendant's three counts, because Conspiracy to Commit Aggravated Identity Theft is a Class D felony, and Aiding and Assisting in the Preparation of a False Tax Return is a Class E felony. 18 U.S.C. § 3561(c)(1). If probation is imposed, a fine, restitution, or community service must also be imposed as a condition of probation unless the Court finds extraordinary circumstances exist making such a condition plainly unreasonable. 18 U.S.C. § 3563(a)(2).

Defendant also faces a maximum fine of $250,000.00 as to each count under 18 U.S.C. § 3571(b). Probation noted Defendant does not appear able to pay a fine. PSR ¶ 70.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 § 3553(a)(4)(A).

As discussed *supra* Part II, Defendant's amended Guidelines calculations after applying the Zero-Point Offender reduction are as follows: Defendant has an amended total offense level of 22 and a criminal history category of I, resulting in an amended Guidelines range of 41 to 51 months of incarceration. All parties agree with this calculation. Second Mot. at 7; Gov't Response at 3; Suppl. PSR at 3.

Probation states Defendant satisfies the criteria for being a Zero-Point Offender and therefore is eligible for a sentence reduction. Suppl. PSR at 2-3. However, Probation does not provide a specific re-sentencing recommendation. *See generally id.* Probation notes Defendant has no disciplinary infractions from his current period of incarceration and his projected release date for his 60-month sentence is July 16, 2026. *Id.* at 3-4.

In his *pro se* motion, Defendant requests the Court re-sentence him to 48 months of incarceration. Second Mot. at 7-8. However, at the re-sentencing hearing Defendant and defense counsel both stated, on the record, Defendant inadvertently wrote 48 months when he intended to write 41 months, even though he wrote 48 months twice in his motion. *Id.* at 7-8 ("A sentence of 48 months would serve to reduce the petitioner's sentence."; "[T]he petitioner asks that this honorable court reduce his sentence to 48 months."). In his *pro se* motion, Defendant argues a lower sentence is warranted under the 18 U.S.C. § 3553(a) factors because of his "post-sentencing conduct." *Id.* at 7. Specifically, Defendant highlights "he has pursued programming to a greater degree than any other similarly situated inmate, and has been free from disciplinary actions." *Id.* Additionally, Defendant requests the Court consider the Sentencing Commission's recidivism studies, which, according to Defendant, show offenders with zero criminal history points are "49% less likely to be re-arrested following their release than other federal offenders."

*Id.* Defendant argues "he will be a positive influence" to his family and the community if released. *Id.* at 8.

The Government does not oppose Defendant's motion to reduce his sentence pursuant to the Zero-Point Offender reduction, and requests the Court impose a new sentence within the amended Guidelines range of 41 to 51 months of incarceration. Gov't Response at 3.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Other than the policy statement contained in U.S.S.G. §1B1.10 regarding sentence reductions resulting from amendments to the Guidelines, the parties have not raised any other pertinent policy statements and the Court finds no others on its own.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Pursuant to 18 U.S.C. § 3663A, restitution in the total amount of $45,869.32 shall be ordered in this case as to Count 37. With respect to Counts 42 and 43, restitution is not mandatory; however, following *United States v. Bok*, 156 F.3d 157 (2d Cir. 1998), the Court may impose restitution as a special

condition of supervised release, which in this case would total $1,463.00 and $907.00, respectively. *See* 18 U.S.C. §§ 3583(d), 3563(b), 3556.

## CONCLUSION

The Court imposes a sentence of 51 months of imprisonment for Count 37, Conspiracy to Commit Aggravated Identity Theft, and 36 months of imprisonment for Counts 42 and 43, Aiding and Assisting in the Preparation of a False Tax Return. The terms of imprisonment on Counts 37, 42, and 43 shall run concurrently. This term of imprisonment is to be followed by three years of supervised release with standard and special conditions for Count 37, and one year of supervised release with standard and special conditions for Counts 42 and 43. The terms of supervised release on Counts 37, 42, and 43 shall run concurrently. The Court orders mandatory restitution in the amount of $45,869.32 on Count 37, and, as a special condition of the one-year term of supervised release imposed on Counts 42 and 43, additional restitution in the amount of $1,463.00 and $907.00. *See* Order of Restitution, ECF No. 111. The Court also imposes a $300.00 mandatory special assessment but does not impose a fine because the Defendant does not have the ability to pay.

This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553. The Court also expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 93, and the Supplemental Presentence Report, ECF No. 136, barring any errors contained therein and to the extent they are not inconsistent with the Court's sentence.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: December 13, 2024
      Brooklyn, New York